IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| HEIDI COX, | ) | CASE NO. 09-6059-HO |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| WAL-MART STORES, INC., a Delaware | ) | |
| corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

INTRODUCTION

Plaintiff Heidi Cox brings this suit against her former
employer, defendant Wal-Mart Stores Inc.,(Wal-Mart) alleging
discrimination and failure to accommodate in violation of the
Americans with Disabilities Act (ADA), Worker's Compensation Act
and federal and state medical leave acts . [#1]. Specifically
plaintiff's suit alleges four claims which include: (1) violation
of 28 U.S.C. § 12110, *et seq*, by disability discrimination; (2)

1 - ORDER

injured worker discrimination in violation of ORS 659 *et seq;* (3) Family Medical Leave Act (FMLA) violation through Wal-Mart's failure to reinstate plaintiff to her former position; and (4) Oregon Family Medical Leave Act (OFLA) violation for failure to reinstate. *Id.*

Defendants move for Summary Judgment against all of plaintiff's claims arguing that; (1) plaintiff's ADA claims fail because plaintiff was not a qualified individual with a disability and to the extent that an accommodation was possible, Wal-Mart engaged in a good faith interactive process which plaintiff broke off, [#32-pp.12-21]; (2) plaintiff's worker's compensation claim fails because plaintiff cannot establish a causal connection between her alleged invocation of the worker's compensation system sometime between May and August 2007, and her termination in May, 2008, [#32-pp.21-26]; and (3) both her FMLA/OFLA "failure to reinstate" claims fail because: plaintiff never sought reinstatement; and there is no evidence that her statutory leave motivated Wal-Mart to terminate her employment or that she was able to return to her employment or has suffered any monetary loss. [#32-pp.26-30].

DISCUSSION

**A.    Undisputed Facts:**

Plaintiff was employed by defendant Wal-Mart from September

2004 until her termination in May[1] 2008.  On March 2, 2007, while

on a break at work, plaintiff passed out and fell to the floor

sustaining a concussion.  Plaintiff's physician determined the

cause of plaintiff's fall was dehydration[2] and low potassium

levels resulting from her Crohn's disease and was not work

related.  As a result of her fall, plaintiff was diagnosed with

post-concussive syndrome which included headaches, dizziness and

vertigo.  Plaintiff took FMLA/OFLA medical leave from March 2,

2007, through May 21, 2007.

Plaintiff did not file a workers compensation claim

following her injury in March.  Later, after receiving medical

bills, she asked personnel manager Janet Demers, whether her

injury was covered by workers compensation insurance.  Ms. Demers

told her it was not because it had been diagnosed as a personal

rather than work-related injury[3]

Upon her release to work in May 2007, plaintiff's work

---

[1]    There is some disagreement about the date in May on
which plaintiff was terminated with plaintiff stating she was
first terminated on May 5, 2008 and then again after she received
her return to work letter.  Defendants respond that plaintiff
signed for her final paycheck on May 22, 2008.  That payout
worksheet showed her termination date as may 18, 2008.  [#53-
Ex.1].

[2]    Plaintiff believes that defendant was partially
responsible for her dehydration because it did not allow
employees to have water bottles while on the floor.

[3]    There is a dispute over whether plaintiff told Ms.
Demers that plaintiff believed she was being discriminated
against by Ms. Demers' response.

restrictions included no lifting or bending or standing on
ladders.  Plaintiff told defendant that she could return to work
if she received the help she needed, could take breaks and be
allowed to sit down and rest when dizzy, could leave early when
not feeling well, and could leave work to see her doctor every
other Friday.  All of these requests were granted by defendant[4].

Plaintiff had these limitations in lifting, bending,
walking, climbing ladders and other daily activities throughout
the rest of her employment at Wal-Mart.  However, on plaintiff's
July 16, 2007, performance evaluation, she received a "Meets
Expectations" rating.

Wal-Mart's policy provides that associates may only incur
three unexcused absences in a rolling six-month period;  more
than three absences subjects the associate to discipline.  Wal-
Mart has a three-level disciplinary process; the first two levels
are a documented "verbal coaching" and a "written coaching."  The
third is a "decision-making day" in which Wal-Mart sets forth the
misconduct and gives the associate a paid day off to develop a
plan to improve that conduct.  Unsuccessful implementation of
that conduct improvement plan may lead to termination.

---

[4]     Plaintiff denies that defendants considered these as
accommodations to a disability. [#46-Ex.6- Hutchison Depo p.130].
Plaintiff also alleges that one requested accommodation (to wear
dark glasses from May 2007-February 2008) was denied by
defendant.  [#47-p.2].  Defendant disputes that allegation. [#51-
p.4].

4 - ORDER

On September 18, 2007, plaintiff received a "verbal coaching" for seven unapproved full-day absences, six of which occurred on days other than Friday.  Plaintiff complained that this coaching was unfair because she believed that her absences were authorized because they were related to doctor's visits for her head injury[5].

Store manager Ken Hutchison advised plaintiff to apply for intermittent FMLA leave to avoid future attendance problems.  Mr. Hutchison then helped her get the paperwork and approved her intermittent leaves which she took thereafter.  Wal-Mart had no further issues with plaintiff's attendance.

However, plaintiff was disciplined for other alleged work place violations.  For example, on January 29, 2008, plaintiff received a written coaching regarding her use of a shopping cart to move cardboard[6].  Later, on February 8, 2008, plaintiff received a decision-making day coaching for failing to remove

---

[5]    It is disputed whether the assistant manager agreed with plaintiff's opinion that this write-up was unfair.  [#47-p.8; #51-p.4].

[6]    Plaintiff disputes Wal-Mart's contention that two other employees who were doing the same thing were disciplined, offering her testimony and that of Belinda Harris in support of her assertion that others engaged in the same conduct and were not disciplined.  [#45-p.2,¶5].  Defendant denies plaintiff's allegations and responds that this testimonial support consists of inadmissible hearsay.  [#51-p.4].

out-of-stock merchandise[7] from the shelves in her assigned area.

In February 2008, plaintiff fell and hurt her knee while at home.  She requested and received a leave of absence from February 8 through May 5, 2008.  This leave was originally for her knee injury but subsequently was extended three times for reasons related to her post-concussive symptoms.

In April 2008, plaintiff applied for and received an award of social security disability insurance benefits.  Plaintiff's application alleged the onset of her complete disability was March 2, 2007[8].  In her application plaintiff represented[9] among other things that: she could not "work full time[10]"; "can't do a lot"; "just a little at a time"; "its hard to do anything"; "my

---

[7]    Plaintiff disputes the accuracy of the charge maintaining that she was unfairly disciplined despite her protestations that she had removed the outdated merchandise and someone else had mistakenly replaced it.  [#44].  Plaintiff testified that she believed that this discipline was retaliatory based on her past question(s) regarding worker's compensation. [#46-ex.3, Pl's Depo p.77].

[8]    See e.g., #35-Ex.3-p.9.

[9]    Plaintiff maintains that her statement that she couldn't work full time meant that she couldn't work full time without accommodation.  [#47-p.3].

[10]   Defendant argues that while plaintiff did not ever say she could not work full time, that *was* the conclusion of the agency which plaintiff did not dispute.  [#51-p.6]. Defendant also asserts that the accommodation that plaintiff claims would allow her to do her job would essentially require other employees to perform the essential functions of her job for her and are therefore unreasonable as a matter of law.  *Id.*

migraines are so bad  . . .I'm laying down a lot of the day"; "I have had a nonstop migraine for over a year from my head injury";"I can't stand for long due to dizziness"; and "I'm not stable on my feet vertigo, bright light, loud noise makes me throw up."  Plaintiff was awarded benefits upon the agency concluding that she was unable to perform her past relevant work or do any other work (including sedentary work), due to her physical problems..

On April 28, 2008, Wal-Mart instituted a new leave of absence policy with new request forms.  On May 2, 2008, plaintiff submitted a written request to extend her leave due to her headaches, past her 12-week protected leave[11] through June 2, 2008.  Plaintiff's doctor approved her request which was submitted on forms identical to those for her previously approved FMLA/OFLA leave applications rather than the new forms.

Mr. Hutchison denied this last leave request and understood that lower management would inform plaintiff of his denial.  At the time of the leave denial, discussion regarding an alternative accommodation to enable plaintiff to remain employed[12] was not

---

[11]     It is disputed whether she used an outdated form to do so and if she did whether she was informed of the need to complete a new form.

[12]     The parties dispute what Ms. Slaughter told plaintiff about what conditions (such as a 100% release, no accommodations etc), would be necessary for her to return to work.  [#51-p.4]. There is also a dispute about whether plaintiff was fired on May

initiated by either party.

On May 9, 2008[13], plaintiff signed for a certified letter from Wal-Mart, which was sent to remind her that she had used all of her protected leave.  The letter also said that after receiving the requested information from her physician, they would look at any restrictions that applied and work with her to see what jobs were available.  The letter set a deadline of May 14, 2008, within which plaintiff must respond or Wal-Mart would assume she had voluntarily terminated her employment with them.[14]

Wal-Mart had a policy whereby employees could apply for a year of extended leave once they had exhausted their 12 weeks of protected leave.  The policy stated that the extended leave request was to be made using the proper form and if granted, the employee would remain employed by Wal-Mart but would no longer have a right to their previous position.  Wal-Mart's management (such as store managers), approved FMLA/OFLA leave.  Lower management members such as Ms. Demers and Ms. Slaughter, provided input but did not have approval authority.

_____

5, 2008.  *Id.*

[13]    <u>See</u>  #34-Ex.14-p.2.

[14]    The parties dispute whether plaintiff contacted Ms. Slaughter on May 13, 2008.  Plaintiff alleges that she asked ms. Slaughter why they were changing their mind about her termination and asked for an extra day or two to get her doctor's release submitted, which Ms. Slaughter denied.  [#47-p.10; #51-p.5].

Mr. Hutchison and Ms Brand contend that plaintiff's employment ended solely because she failed to return the proper paperwork, failed to respond to their overtures and failed to return to work upon her approved leave of absence ending. Plaintiff's prior discipline they assert, had nothing to do with her termination[15].

Since her termination from Wal-Mart, plaintiff has neither worked nor applied for a job[16]. Prior to her head injury plaintiff had been promoted to department manager, received praise for her work, subsequent to her July 2005, evaluation, had received a raise and her July 2006 evaluation reported she exceeded expectations. Mr. Hutchison testified that she was a good employee. Subsequent to her head injury, plaintiff's evaluations dropped from 'exceeds' to 'meets' expectations.

<u>Discussion</u>

**A.    Standard for Summary Judgment:**

Summary judgment is authorized by Fed. R. Civ. P. 56, if no

---

[15]    The parties agree that Ms. Slaughter contends that she told plaintiff that she needed a doctor's release without restrictions in order to return to work. The new form had a place for modifications to be entered. If modifications were entered on the form, Ms. Slaughter would give the employee an ADA accommodation form. Ms. Slaughter and Ms. Brand would be unable to consider an employee's request for accommodation that was not provided on the accommodation form.

[16]    The parties contest whether plaintiff ever sought reinstatement.

genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving party must show the absence of any genuine issue of material fact.  *Leisek v. Brightwood Corp.,* 278 F.3d 895, 898 (9th Cir. 2002).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986).  The Court must draw all reasonable inferences in the favor of the nonmoving party.  *Id.*

### B    Plaintiff's ADA claims:

Defendant moves for summary judgment on plaintiff's ADA claims arguing that plaintiff is not a "qualified individual with a disability"; that contrary to plaintiff's assertions, Wal-Mart *did* engage in the interactive process as required by the statute and in fact it was plaintiff who ended the interaction by failing to respond to Wal-Mart's last certified letter. [#32-pp.12-21; #61].  Defendant contends that both plaintiff's representations to the Social Security Administration (SSA), and the agency's subsequent conclusion to award plaintiff benefits, bolster defendant's assertion that plaintiff is not qualified.  *Id.*

Plaintiff asserts that she has established a *prima facie* case of disability discrimination and has adduced sufficient evidence of her qualifications to survive summary judgment.

[#43- p.19].  She argues that her representations to the SSA do not establish that she is not qualified but rather that she "realized that [she] couldn't do [her] job completely without help." [#43-p.21].  Plaintiff additionally asserts that she did not tell the SSA that she was too disabled to work as of March 2, 2007, but rather that she gave that date when she was asked by the SSA for the date of her head injury[17].  [#43-p.22].

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability...."  42 U.S.C. §12112(a).  The statute defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. §12111(8).

A plaintiff suing pursuant to the ADA has the burden of proving that she is a "qualified individual with a disability." *Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104, 1108 (9th Cir.2000)(quoting *Cleveland v. Policy Managem't Sys.Corp.,* 526 U.S. 795(1999)).  The *Cleveland* Court addressed the issue of whether a plaintiff who represented to the SSA that she was

---

[17]    On April 3, 2008, SSA interviewer N. Fritz recorded "Claimant alleged onset date of 3/2/2007 as the date she became too disabled to work." [#35-Ex.3,p.9]

11 - ORDER

totally disabled could also consistently claim to be a qualified individual with a disability for purposes of the ADA. *Cleveland* 526 U.S. at 797.

The *Cleveland* Court found that the two claims "do not inherently conflict to the point where courts should apply a special negative presumption, ... because there are too many situations in which an SSDI claim and an ADA claim can comfortably exist side by side." *Id.* at 802-803. The *Cleveland* Court reasoned that because in some cases these claims may conflict, the ADA plaintiff bears the burden of proving that she is a person "who, with or without reasonable accommodation, can perform the essential functions" of her job. *Id.* at 805-806(a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case - at least if she does not offer a sufficient explanation).

The Court further stated that "an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the . . . SSDI total disability claim. *Rather, she must proffer a sufficient explanation.*" *Id.*(emphasis added). The Court also clarified that the case before it did not "involve directly conflicting statements about purely factual matters, such as . . ."I can/cannot raise my arm above my head [,]" and indeed the

12 - ORDER

decision "leaves the law related to . . purely factual . .
.conflict[s] where the Court found it." *Cleveland*, 526 U.S. at
802.

In other words, a plaintiff (such as Ms. Cox), who has made
factual assertions to the SSA tribunal, which are inconsistent
with her present claim(s) that she *can* perform the essential
functions of her job, must make sufficient explanation of her
inconsistent statements to warrant a reasonable juror concluding
that, assuming the truth of, or her good faith belief in the
earlier statement, she *could* perform the essential functions of
her job with or without reasonable accommodation. *Cleveland,* 526
U.S. at 807.

In this instance on April 7, 2008, plaintiff applied for
Social Security Disability Insurance (SSDI) benefits claiming
that: she was "dizzy all the time and my brain detached from my
scull [sic] so it's hard to do anything"[#35-Ex.1,p.1]; "I can't
stand for long due to dizziness" [#35-Ex.1,p.2]; "[m]y short term
memory is gone" [*Id.*]; I get dizzy [j]ust standing I'm off
balance, forget [when cooking] what I've put in . . . I mess up
every time." [*Id.* at p.3]; "I'm always dizzy and have non-stop
migraine headaches for over 1 year" *[Id.];* "I'm not stable on my
feet, vertigo [sic], bright light, loud noise makes me throw up",
[#35-Ex.1,p.4]; "squatting, bending standing very little it makes

13 - ORDER

my head pound . .  I have a hard time focusing" [*Id.* at p.6] and testified that she could not follow spoken instructions because her "short term memory was gone" and she required written instructions but could not understand those without having "to read it over and over to get it." [*Id.*].  Plaintiff concluded her description of her condition saying that she could not handle stress "at all" since her injury. [*Id.* at p.7].

These self-reported statements were adopted by the SSA in finding that plaintiff was " not able to sustain even sed[entary] work due to physical problems . . . ." [#35-Ex.2,p.2] and awarding her benefits using "the claimant's allegation of 3/2/2007 as her onset date." [#35-Ex.3,p.9].  These statements negate an essential element of her ADA claim.

Plaintiff's proffered explanation that she is a qualified individual because for example, she meant that she is only limited in bending completely over at her waist so that her head and torso were below her waist and in lifting more than 40 pounds, is at odds with significant portions of the record.  The record indicates among other things, that in the opinion of plaintiff's treating physician, plaintiff can never lift more that 20 pounds and should have no frequent lifting at all, cannot stand or walk more than 2 hours a day and can never stoop, kneel or crouch due to marked increase in symptoms resulting from these activities.  [See e.g., #62-Ex. 3, Ex. 4].  Further, the record

14 - ORDER

indicates that, contrary to plaintiff's recent assertions regarding the essential functions of her work, she reported that she *was* required to reach, bend, stoop, kneel and crouch, frequently (1/3 to 2/3 of her day) lift 25 pounds and supervise 20 people. Plaintiff's deposition testimony similarly indicates that she needed to lift, bend and get on ladders in order to do her job. [#46-Att.3-p.7].

In this instance, plaintiff offered detailed explanations of her inability to function which resulted in the agency finding her totally disabled and unable to work - a conclusion that plaintiff did not contest and which resulted in her award of benefits. I find plaintiff has failed to provide sufficient explanation for the contradictions between her SSDI representations indicating that she is totally disabled and her ADA claims that she is a qualified individual with a disability. She has failed to carry her burden of showing the existence of a reasonable accommodation which would have enabled her to perform the essential functions of her job.

It is also well established that " [e]mployers . . . are not required to find another job for an employee who is not qualified for the job he or she was doing." *Sch Bd. Of Nassau County v. Arline,* 480 U.S. 273, 289 fn.19 (1987). Thus, plaintiff's contention that defendant failed to offer reassignment as an a reasonable accommodation, also fails.

15 - ORDER

It is undisputed that although plaintiff received Wal-Mart's offer (in their May 2008,letter), to "look at any restrictions that apply and work with [her] to see what jobs are available." [#34-Ex.14,p.1].  Save for plaintiff (on the eve of the May 14th deadline), asking Ms. Slaughter to extend that deadline, it is undisputed that plaintiff failed to respond to that offer. Plaintiff's claims that defendant failed to negotiate in good faith are thus unsupported by the record.

### C.    Worker's Compensation claims

ORS 659A.040 provides that it is "an unlawful employment practice for an employer to discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in ORS chapter 656 or has given testimony under the provisions of those laws."

To establish a *prima facie* case under that provision, a plaintiff must show (1) that the plaintiff invoked the workers' compensation system; (2) that the plaintiff was discriminated against in the tenure, terms or conditions of employment; and (3) that the employer discriminated against the plaintiff in the tenure or terms of employment because she invoked the workers' compensation system.  *Hardie v. Legacy Health Syst.,*167 Or.App. 425, 433 (2000) *rev.denied* 322 Or. 656 (2001).

Plaintiff claims that defendant retaliated against her and

16 - ORDER

terminated her employment as a result of her invocation of the
protections of the worker's compensation scheme.   Defendant moves
to dismiss plaintiff's claims of worker's compensation
retaliation arguing that she cannot establish any causal
relationship between her inquiry into whether her injury might be
compensable and her later termination.

It is undisputed that plaintiff did not file a worker's
compensation claim upon her initial injury.   Nor is it disputed
that later (sometime between May and August, 2007), after
receiving some medical bills, plaintiff asked Ms. Demers whether
her injury was compensable.   It is similarly undisputed that Ms
Demers replied that because plaintiff's injury was "personal"
rather than work related, Ms. Demers did not believe it was
compensable[18].   Nor is it disputed that plaintiff was terminated
from her employment sometime in May 2008, or that plaintiff
received several written "coachings" prior to her termination.

However, a nonmoving party may not simply rely on her own
unsupported declarations to create an issue of material fact.
*Arpin v. Sanata Clara Valley transp. Agency,* 261 F.3d 912,922
(9th Cir. 2001).   To be cognizable on summary judgment, evidence

---

[18]   Incidentally, Ms. Demers' conclusion was supported by
plaintiff's treating physician Dr. Chapin who opined that
plaintiff's injury resulted from dehydration and hypokalemia
which were "due to her Crohn's disease , which is not related to
her work." [#35-Ex.7,p.3].

must be competent.  *Carmen v. San Francisco Unif'd Sch Distr.,* 237 F.3d 1026, 1028 (9th Cir. 2001).

In this instance, plaintiff offers no evidence other than her personal beliefs to establish that defendant had retaliatory motives for plaintiff's "coaching" or indeed, that her single query about worker's compensation was connected to her subsequent termination.  She has therefore failed to establish her retaliation claim.

### D.   FMLA/OFLA Claims:

Plaintiff alleges that defendant violated her rights under FMLA and OFLA by failing to reinstate her to her former position on or about May 5, 2008.  [#1-pp.4-5].  Defendant moves for summary judgment on these claims arguing that plaintiff's claims fail because: (1) she never sought reinstatement; and (2) there is no evidence that her statutory leave motivated Wal-Mart to terminate her employment. [#32-pp.26-30; #52-pp.12-18].

The FMLA and OFLA provide covered employees with up to 12 weeks of leave for various specified reasons including seeking treatment for or recovering from a serious health condition.  29 U.S.C.§ 2612(a)(1); ORS 659A.159(1)©; ORS 659.162(1).  These statutes also provide eligible employees a right to reinstatement following a statutory leave of absence.  29 C.F.R. 825.214(a); OAR 839.009-270(1)

It is undisputed that Mr. Hutchinson advised plaintiff about her option of using intermittent leave rather than continue her unexcused absences which were subjecting her to discipline.  Nor is it disputed that Mr. Hutchinson helped her get the necessary paperwork and personally approved it.[19]

Nor is it disputed that following her fall in February, 2008 (in which plaintiff injured her knee at home), plaintiff requested and received leave that began February 8 through March 5, 2008.  [#34-Ex.9].  Additionally the record shows that plaintiff submitted two subsequent requests for leave extensions - first until April 4, 2008 and second, through May 5, 2008. [#34-Exs.10, 12].  Upon her leaves' expiration, plaintiff sought to extend her leave into June.  [#34-Ex.13].  During this time plaintiff also made her SSDI application seeking benefits because she was unable to work.  In short, nothing in the record supports plaintiff's claim that she was seeking and was denied reinstatement.

Nothing in FMLA or OFLA requires an employer to retain an employee after her leave terminates when that employee is unable to work.  *Smith v. Guard Publishing*, 155 Or.App. 481, 483 (1998). However, even if plaintiff was not totally disabled (despite the

---

[19]    Following palintiff's approval for intermittent leave, she had 15 approved absences and was approved to leave early 16 times [#46-Att.3,p.14].

SSA contrary finding and award of benefits), and plaintiff *was* able to return to work with accommodations as claimed, there is no evidence in the record to support her contention that she sought or requested such accommodation and reinstatement.

There is however, evidence in the record that defendant offered to accommodate plaintiff when in May, 2008, Ms. Lynch wrote saying "we will look at any restrictions that apply and work with [her] to see what jobs are available." [#34-Ex.14]. I therefore find that plaintiff's claims that her employment was terminated in retaliation for taking protected leave are inconsistent with the record.

<u>CONCLUSION</u>

For the reasons detailed above, defendant's Motion for Summary Judgment (#31) is GRANTED and plaintiff's claims are dismissed.

IT IS SO ORDERED.

DATED this <u>11th</u> day of August, 2010.

<u>s/ Michael R. Hogan</u>

United States District Judge

20 - ORDER